## Rhodes-Burford Company et al. v. Agnes Gartner.

1. EXEMPLARY DAMAGES—*how question of award of, determined.* Whether or not a trespass was committed under circumstances showing such aggravation as to authorize vindictive damages, is a question of fact for the jury.

2. REPLEVIN—*when cannot be maintained upon authority of chattel mortgage.* Where a chattel mortgage has been abandoned, it will not sustain an action of replevin predicated thereon.

Trespass. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

ALEX. FLANNIGEN and B. H. CANBY, for appellants.

KEEFE & SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellant, Rhodes-Burford Company, is a corporation engaged in selling furniture, stoves and household goods on the installment plan. On November 25, 1904, appellee purchased furniture, stoves and other articles amounting to $378.65, agreeing to pay for them at the rate of $10 a month. The following day she went to the company's place of business and executed a note for the amount and also a chattel mortgage on the articles purchased to secure the same. After she had signed the papers, she noticed they provided for the payment of $15 a month, in the place of $10 as agreed upon. She objected to this and told Mr. Moran, who was the company's manager, and with whom she was

transacting the business, that she would not accept the goods on those terms; that when she bought the goods she agreed to pay $10 a month and that she was afraid she could not pay $15 a month. After some controversy it was agreed that she could have the goods and pay for them at the rate of $2 a week for the first four months and then at a greater rate. Just what the amount to be paid, after the expiration of four months was, does not satisfactorily appear. She was then given a small book with a list of the items, the cost thereof and a place for the credits, at the bottom of which was the following entry made by Mr. Moran: "Payments $2 every week four months, then more." Appellee testified that after Moran handed her the receipt book, she expressed a fear that he might afterwards try to hold her to the payment of the $15 per month, provided for by the note and mortgage, but he replied that he would not, that he would destroy the note and mortgage and that his word was as good as his bond. Moran denies this and says she was to pay $2 a week for four months and then $15 per month, also that she said that after the first of March she would pay $50 on the bill. Appellee's statement as to what was said on this occasion, is corroborated by her sister, who was present at the time. Taking either the version given by appellee and her sister, or that given by Mr. Moran, as to what took place at that time, it is plain that the arrangement finally made between the parties was not that contemplated by and contained in the note and mortgage, and that it superseded and took the place of the note and mortgage. Appellee when the arrangement was made, paid $20 in cash which was credited on her book and had the goods sent to her house.

Her book shows payments up to and including January 31, 1905, amounting to $33.50. She testified that on February 15, 1905, she paid $5 to a collector of appellant, which was not credited, and thereafter, about three weeks before the goods were taken by appellant, she offered to pay the collector $10 more, but that he refused to accept less than $15. The collector was not a witness and these statements of ap-

pellee's were not denied, except in general terms by Mr. Moran, who was not present at the time and could know nothing of the facts, except as he learned them from others. A few days before the goods were taken, and after she claims to have tendered the collector the $10 which he refused to accept, appellee called on Mr. Moran and told him that she and her husband, from whom she had been separated for a time, were going to live together again, and that if they did not pay the bill in full they would continue to pay $2 a week, and he told her that it would be all right. This statement is however denied by Mr. Moran.

On April 26 Mr. Moran, as manager of the appellant company, swore out a writ of replevin for the goods, stating that said company was the owner of them and that they were wrongfully detained by appellee, and gave it to Harry Thompson, one of the appellants, a constable, to execute. That night appellee and her sister and children occupied the house but left the next morning about eight o'clock. A few hours after they left the house, the constable went there with a wagon and two employees of appellant. The constable tried the door and found it locked, but one of the employees produced some false keys with one of which the door was unlocked, and they all went inside. Some one notified appellee of what was going on, but when she arrived at the house, she found the furniture had been removed and was on the wagon. The bed clothing was thrown around, papers, receipts and articles of household use, which had been in the dresser drawers, were scattered on the floor, the dishes were all over the kitchen floor, and a gold chain and ring, which she had left in a box with her receipts, were gone.

On May 3, 1905, appellee brought suit in an action of trespass against appellants, for damages alleged to have been sustained by her at the time the goods were taken by them.

The declaration contained counts of *quare clausum fregit* and *de bonis asportatis*. Appellants filed the general issue, a special plea of leave and license in general terms to enter the premises, given them by appellee; and also a special plea

in which they justified the seizure of the goods and the delivery of the same to said company by virtue of the note and chattel mortgage and the alleged default by appellee in the payment therein provided for, and also by virtue of the writ of replevin, to the constable, which appellant, Rhodes-Burford Co., caused to be issued. Upon the trial the jury found appellants guilty, assessing appellee's damages at $300, and judgment was entered for that amount.

Some complaint is made by appellants of the action of the court below in sustaining a demurrer to what are called appellants' first special and second additional plea. No injury was done appellants however, for the reason that whatever was purported to be pleaded in these pleas, was afterwards included in the pleas filed by appellant and above explained, upon which the cause was tried. The other reasons assigned by appellants for reversing the judgment of the court below, are substantially included in the propositions that the verdict was excessive, and was not supported by the evidence, and that the court erred in regard to the instructions.

The general plea of leave and license to enter the premises was based upon a provision of the chattel mortgage that in case of default in the performance of its conditions, the mortgagee might take possession of the goods and chattels mortgaged, and for that purpose might enter upon any premises where the same might be.

Appellants' plea to the second additional count sought to justify both entering the premises and carrying away the goods and chattels of appellee, by virtue of the chattel mortgage and the writ of replevin issued after an alleged default in the payments mentioned in the mortgage. In the absence of authority given by the chattel mortgage, neither one of these pleas could be sustained. The evidence in the case as hereinbefore referred to, was sufficient to warrant the jury in finding that the original note and mortgage had been abandoned, and that appellant was not entitled to claim the privileges given by the chattel mortgage.

Upon the questions raised by the general issue, there was

ample evidence to support the finding of the jury against the appellant. In no event could appellant justify the taking of appellee's gold ring and chain. It is said by appellants that there was no proof that the constable or the company's employees took the gold ring and chain, but circumstances shown by the evidence, were, we think, sufficient to charge appellants with responsibility for the loss of those articles. Whether or not a trespass was committed, under circumstances showing such aggravation as to authorize vindictive damages, was a question of fact for the jury, and the verdict was not sufficiently large to show that they abused their discretion in that regard. Cutler v. Smith, 57 Ill., 252.

Appellants criticise certain instructions given for appellee upon the question of the right of appellants to enter the residence of appellee without her consent, and say that they are inapplicable to the facts in this case, because appellants had lawful right by the leave and license given in the chattel mortgage, to use such force as might be necessary, so long as no breach of the peace was committed, to enter the dwelling house of appellee, for the purpose of taking said goods and chattels, after the default in payment of the debt.

While the instructions referred to did not state the law with accuracy yet they are not subject to the criticism made by appellants for the reason that the chattel mortgage as we have above held was abandoned and appellants were not entitled to maintain replevin on the supposed authority conferred by the same.

Appellants also complain that the court refused to give its instruction No. 1, upon the ground that its substance was contained in a given instruction. We find that the substance of the instruction refused was fully covered by other instructions given on behalf of appellants, and that therefore the court did not err in refusing to give it.

We are of opinion that no reversible error was committed in the trial of this case, and that substantial justice has been done.

The judgment of the court below will accordingly be affirmed.                                    *Affirmed.*